496 S.E.2d 619

**In the Matter of Harvey L. GOLDEN, Respondent.**

**No. 24747.**

Supreme Court of South Carolina.

Heard July 8, 1997.

Decided Jan. 19, 1998.

J. Mark Taylor, of Kirkland, Wilson, Moore, Allen, Taylor & O'Day, P.A., West Columbia; David H. Wilkins, of Wilkins & Madden, P.A., Greenville; and John P. Freeman, Columbia, for Respondent.

Attorney General Charles Molony Condon and Senior Assistant Attorney General James G. Bogle, Jr., Columbia, for Complainant.

PER CURIAM

In this attorney grievance matter, the Respondent Harvey L. Golden ("Attorney") is alleged to have committed misconduct by making gratuitously insulting, threatening, and demeaning comments in the course of two depositions. It is alleged that Attorney's conduct violated Rules 4.4 and 8.4 of

the Rules of Professional Conduct, Rule 407, SCACR, and section 5 of the Rule of Disciplinary Procedure, former Rule 413, SCACR. Attorney denies any misconduct. He contends his actions during the depositions were reasonable and necessary to obtain responses from hostile witnesses. Attorney further asserts his comments after one deposition were merely intended to be humorous.

Two members of the hearing Panel found misconduct as alleged and recommended attorney be privately reprimanded for misconduct; one Panel member recommended the matter be dismissed. The Interim Review Committee unanimously adopted the findings of fact and conclusions of law set forth in the majority's Panel Report. As to the sanction, all committee members participating[1] recommended some form of public sanction. Three voted that Attorney be suspended from the practice of law for thirty days; three voted that he be publicly reprimanded. After hearing arguments of counsel, reviewing the record, including the court reporter's tape recording of one of the depositions, and considering the applicable law, we find the appropriate sanction is a public reprimand.

## FACTS

### Smith Deposition

Attorney represented Mrs. Doe in a divorce action.[2] Pursuant to a temporary order, Mrs. Doe was receiving alimony. Attorney advised Mrs. Doe she could jeopardize her alimony if she had a boyfriend prior to her divorce. Mrs. Doe ended her relationship with Mr. Smith, apparently as a result of this advice. Thereafter, Mr. Smith contacted Mr. Doe's attorney and informed her he was having an adulterous relationship with Mrs. Doe. Based on this information, Mr. Doe filed a motion to terminate Mrs. Doe's alimony. Attorney noticed Mr. Smith's deposition.

In December 1994, Attorney deposed Mr. Smith. Smith was not represented by counsel at the deposition. He was a

---

1. One member of the Interim Review Committee did not participate in this matter.

2. Due to the sensitive nature of these matters, pseudonyms have been used.

retired school teacher who had been hospitalized for emotional problems on six occasions within the previous fifteen years. He suffered from several disabilities including injuries to his lower back as the result of an automobile accident, debilitating migraine headaches, and bipolar affective disorder for which he was being treated with a series of psychotropic medications. The witness's physical and mental disabilities were fully known to Attorney who agreed that Smith was not mentally well.

We have reviewed both the written transcript and the audio recording of the deposition. The following are a few examples from the deposition transcript that illustrate Attorney's conduct at the deposition:

(1) [Attorney]: And who was your lawyer in your first divorce?

[Smith]: Me.

[Attorney]: Was that because you are cheap or you think you are smart enough to be your own lawyer? Is that what you think?

[Smith]: What kind of a question is that?

[Attorney]: Its a good question.

(2) [Attorney]: I don't need criticism from you. You ain't nearly as good as I am about answering questions or asking them. Just answer my questions, mister.

(3) [Attorney]: Don't get snide with me. Just answer my questions or you are going to be in severe difficulty, especially if you make me angry at you. I'm not going to try to get angry with you. Just answer my questions.

(4) [Attorney]: You are coming across as an absolutely ridiculous person. But that's okay, you will learn the hard way.

(5) [Attorney]: You are not smart enough to question my questions. You are not smart enough to even answer my questions. But do the best you can.

(6) [Attorney]: Do you understand English? I speak real clear English.

(7) [Attorney]: You—you must understand that this is not just a test of your telling the truth, this is also a test of

your reasonableness. And whether you flunked or not is not going to be subject of my discussion here at this time.

(8) [Attorney]: And if you keep your mouth shut I might get on to [the] next question.

(9) [Attorney]: You are going to jail if you are an obstructionist in this State here, and especially if you are lying.

(10) [Attorney]: Well, I am not going to argue with you. You are not smart enough to argue with.

(11) [Attorney]: No, you don't tell me how to ask questions. We just take your answers down and we'll deal with you with the judge. See, and then we will see how smart you are.

(12) [Attorney]: You are just not smart enough to know what a restraining order is.

(13) [Attorney]: So you think it is your scintillating personality that caused him to want to play chess with you?

(14) [Attorney]: And when was that?

[Smith]: When was that? It was more than once. The first night was New Years Eve.

[Attorney]: What year?

[Smith]: It was, it was the New Years Eve we left the party.

[Attorney]: What year?

[Smith]: I would say it was January 1st 1994 was the first time we ever did it.

[Attorney]: 1994?

[Smith]: Uh-huh. (Indicating yes).

[Attorney]: That's not New Years Eve. January first is not New Years Eve.

[Smith]: I know but see the clock goes through 12:00. And when it goes past twelve then it is the next day, which makes it January 1st.

[Attorney]: And no longer New Years Eve, is it?

(15) [Attorney]: Did you fight them?

[Smith]: Huh?

[Attorney]: Did you fight them?

[Smith]: No, I didn't fight them.

[Attorney]: Okay. So they didn't need five, they just needed one, right?

[Smith]: I bit one.

[Attorney]: Why did you bite him?

[Smith]: 'Cause I was hungry.

[Attorney]: Okay. Where did you bite him?

[Smith]: (sigh) He had his foot—

[Attorney]: Where did—

[Smith]: —in my—

[Attorney]: I didn't say why. I—

[Smith]: Okay.

[Attorney]: —Asked you where did you bite him?

[Smith]: Okay. Somewhere around his ankle. It was right on top of my face.

[Attorney]: Uh-huh. And was that because you were trying to fight them?

[Smith]: If you had been there I would probably bite you, too.

[Attorney]: No, I'd shoot you before you could bite me.

[Smith]: Oh.

[Attorney]: Guaranteed. Guaranteed.

(16) Attorney referred to Smith, who had been a patient at Charter Hospital, as an "inmate" of the hospital.

(17) Smith injured his back moving a box of books while preparing for the school year. Attorney asked Smith, who was a teacher, if he was the janitor:

[Attorney]: You are not a janitor, are you?

[Smith]: Huh?

[Attorney]: You are not the janitor, are you?

[Smith]: Gee, now what kind of question was that?

. . . .

[Attorney]: . . . When you said you get the desks in order, that's something for the janitor to do, get the desks in order?

Attorney testified the purpose of Mr. Smith's deposition was to destroy Mr. Smith's credibility. He denied he had any intent to embarrass, delay, or otherwise burden Mr. Smith, or

to pollute the administration of justice. Attorney admitted he made some mistakes in the deposition. For instance, he stated he allowed Mr. Smith to "get to him" and admitted he should have set the tone for the deposition.

### Jones Deposition

In May 1994, Attorney, who was representing Mr. Jones, deposed Mrs. Jones, the adverse party in a domestic proceeding. Mrs. Jones's attorney was present during the course of her deposition, although some of the alleged comments by Attorney took place off the record when her attorney was not present.

The grievance complaint alleged that after the deposition, Attorney stated to Mrs. Jones: "You are a mean-spirited, vicious witch and I don't like your face and I don't like your voice. What I'd like, is to be locked in a room with you naked with a very sharp knife." Thereafter, it is alleged that Attorney said: "What we need for her [pointing to Mrs. Jones] is a big bag to put her in without the mouth cut out."

At the Panel hearing, Mrs. Jones testified as follows regarding Attorney's comments after the deposition:

... It was at the end, and the court reporter was beginning to put her things away. [Attorney] pushed all of his papers at me like that, and he leaned across the table, and he pointed his finger, and he said, "You are a meanspirited, vicious witch, and I don't like your face, and I don't like your voice, and what I want," and at that point he stood up, and he screamed, "What I want is to be locked in a room naked with you with a sharp knife," and I said, "Naked?" He said, "Yes, naked with a sharp—locked in a room naked," and I said "Uh," ... I then said to [Attorney], "What? Naked? What are you going to do? ..." And he said, "No, I will kill you with the thing." And at that point ..., the paralegal for [opposing counsel], came in ... and [Attorney] then pointed ... and he said to [the paralegal], "what we need for her is a big bag to put her in without the mouth cut out."

Opposing counsel's legal assistant testified that during a break in the deposition, she entered the conference room to give opposing counsel a note. She testified she heard Attor-

ney state that he would like to put a plastic bag without any air holes over Mrs. Jones.

In his answer, Attorney "adamantly denie[d]" making the "big bag" comment. However, during the Panel hearing, he admitted making the "big bag" comment, but stated Mrs. Jones took it out of context. Secondly, he contended that he had jokingly said that the only way the matter could be resolved would be to lock Mr. and Mrs. Jones naked in a room with a knife on the table and let the better participant emerge triumphant.

### ANALYSIS

■ With regard to the Smith matter, the Hearing Panel concluded that Attorney's actions demonstrated

his total disregard and failure to show any respect for the rights of a third party. The extent, the intensity, the sarcasm and maliciousness, the unnecessary combativeness, the gratuitous threatening and intimidation, and the unequivocal bad manners of [Attorney's] conduct could have been for no purpose other than to embarrass or burden [Mr. Smith].

The Panel found Attorney's conduct in the Smith deposition violated Rule 4.4 of the Rules of Professional Conduct, Rule 407, SCACR. Rule 4.4 provides, in part: "In representing a client, a lawyer shall not use means that have no purpose other than to embarrass, delay, or burden a third person. . . ." The Panel concluded Attorney had no legitimate purpose for his conduct. We concur with the Panel's analysis.

Attorney's words speak for themselves. Even if we assume that the deposition witness was uncooperative, Attorney would not be justified abusing this witness in the manner illustrated above. The record further shows that Attorney interrupted Smith on numerous occasions. Moreover, the audio recording reveals the volume of Attorney's voice was repeatedly loud, and his statements were sarcastic, rude, or otherwise inappropriate. He acted in a threatening and demeaning manner. His conduct was outrageous and completely departed from the standards of our profession, much less basic notions of human decency and civility.

While attacking a witness's credibility is a legitimate and often necessary objective, Attorney's conduct at the Smith deposition went far beyond this purpose. We find Attorney's bullying of a mentally unstable witness in the Smith deposition an utterly inappropriate trial tactic. Although Mr. Smith was a hostile witness,[3] Attorney's behavior was unwarranted. If he truly thought Mr. Smith was intentionally being unresponsive and recalcitrant, Attorney could have recessed the deposition and moved the family court for an order requiring Mr. Smith to respond appropriately. We find, by clear and convincing evidence, that Attorney used means that had no purpose other than to embarrass, delay, or burden a third person. Thus, he has violated Rule 4.4 by his conduct at the Smith deposition.

With regard to the Jones deposition, the Panel concluded Attorney had commented off the record that Mrs. Jones was "mean spirited," that someone should be "locked in a room naked" with her, and that he would like to put a bag over her without a hole for her mouth. They found that Attorney made these comments in an agitated tone of voice. The Panel did not believe these comments were an attempt at humor, but rather, the Panel found Attorney's comments were intended to be insulting and degrading. It concluded that Attorney's conduct tended to pollute the administration of justice and to bring the legal profession into disrepute. This conclusion was reached based on testimony of Mrs. Jones, of the legal assistant, and of opposing counsel who overheard Attorney saying "mean spirited" and "locked in a room naked." Moreover, Attorney's credibility was damaged by his selfcontradiction as to the "big bag" comment. Initially, he adamantly denied making the comment, but he later claimed at the Panel hearing that the comment was taken out of context. We fully agree with the Panel's conclusions. We find Attorney's comments after the Jones deposition could not possibly be interpreted as humorous, particularly in light of the serious nature

---

**3.** The transcript and tape recording indicate Mr. Smith was suspicious and often difficult; at times, Mr. Smith yelled and once threatened to turn over the conference table. This outburst took place after Smith had been repeatedly ridiculed and bullied by Attorney. Attorney testified he deliberately attempted to provoke Smith into an outburst so as to damage Smith's credibility.

of the issues and highly charged atmosphere of the deposition. Attorney's comments only served to insult an adverse party. Rule 8.4 of the Rules of Professional Conduct, Rule 407, SCACR, is violated when a lawyer engages in conduct prejudicial to the administration of justice. *See also* Rule 413, parag. 5.D, Rule on Disciplinary Procedure. We find, by clear and convincing evidence, that Attorney violated these rules by his misconduct at the Jones deposition.

We remind the Bar that although a deposition is not conducted in a courtroom in the presence of a judge, it is nonetheless a judicial setting. Because there is no presiding authority, it is even more incumbent upon attorneys to conduct themselves in a professional and civil manner during a deposition.

### Sanction

The ultimate authority to discipline attorneys and the manner of discipline rests with this Court. *In re Dobson, III,* 310 S.C. 422, 427 S.E.2d 166 (1993). Analysis of the instant case reveals conduct much more egregious than a previous matter wherein we imposed a public reprimand for similar behavior. *In re Goude,* 296 S.C. 510, 374 S.E.2d 496 (1988) concerned a young attorney's misconduct at a sentencing hearing and outside a courtroom, where he made insulting remarks towards a child victim in a criminal matter. We publicly reprimanded the attorney, finding his conduct violated DR 7–106(C)(6), which prohibits a lawyer from engaging in undignified or discourteous conduct degrading to a tribunal, and DR 1–102(A)(5) and (6), which prohibit conduct prejudicial to the administration of justice and which adversely reflects on fitness to practice law.

Attorney's actions in the present case are much more reprehensible than that which we sanctioned in *Goude.* Here, we do not have a single incident, but two separate matters involving different parties and different depositions. Here, we do not have a momentary loss of cool, but rather, a repeated pattern of misconduct over the course of an entire deposition. Here, we do not have a few negative remarks, but rather, comment after comment—*seventeen* of which are set forth above in connection with the Smith deposition and *two* of

which are delineated as to the Jones deposition—intending to intimidate and harass.  Here we do not have an inexperienced attorney, but rather an attorney who has been practicing for over four decades.

The Panel, which had an opportunity to hear first-hand the testimony of the witnesses, summed up Attorney's actions in the following way:

> [Attorney's] conduct . . . exemplifies the worst stereotype of an arrogant, rude, and overbearing attorney.  It goes far beyond tactical aggressiveness to a level of gratuitous insult, intimidation, and degradation of the witness.  It is behavior that brings the legal profession into disrepute.

We agree.

Attorney urges us to impose no sanction in this matter.  Alternatively, Attorney argues that any sanction be mitigated by his experience and standing in the profession, his health problems for the past several years, and his lack of disciplinary history until recently.  We approach attorney discipline matters with a heavy heart, especially in a case such as this one.  Attorney has been a prominent and productive member of this state's bar for over four decades.  He has been a leader nationally in the establishment of standards for the practice of domestic and family law.  He has encouraged and mentored several generations of highly skilled and respected family law practitioners, including his two lead counsel in this matter who have so eloquently presented his case.  We do take all of these factors into account.  Nevertheless, we cannot utilize a different set of sanctions for misconduct committed by a lawyer of high standing and long experience, than that utilized when similar misconduct is found in a young and inexperienced practitioner.

We find that a public reprimand should be imposed for Attorney's violations of Rules 4.4 and 8.4 of the Rules of Professional Conduct, Rule 407, SCACR, and section 5 of the Rule of Disciplinary Procedure, former Rule 413, SCACR.  Attorney's acts are veritably prejudicial to the administration of justice and undermine the very foundations of respect for the rule of law.  Accordingly Harvey L. Golden is hereby publicly reprimanded.

**PUBLIC REPRIMAND.**