CINCINNATI BAR ASSOCIATION *v*. STATZER.

[Cite as *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649.]

*Attorneys at law — Misconduct — Six-month suspension with sanction stayed on condition that attorney engage in no further misconduct — Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation — Appearing in a professional capacity before a tribunal and alluding to a matter that will not be supported by admissible evidence.*

(No. 2003-1109 — Submitted September 16, 2003 — Decided December 31, 2003.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 02-45.

————————————

**O'CONNOR, J**.

{¶1} Respondent, Joni Elizabeth Statzer of Cleves, Ohio, Attorney Registration No. 0067179, was admitted to the Ohio bar in 1996. On June 17, 2002, relator, Cincinnati Bar Association, charged respondent with violations of the Code of Professional Responsibility in a two-count complaint. Relator later amended its complaint to include a third count of misconduct.

{¶2} A panel appointed by the Board of Commissioners on Grievances and Discipline heard the cause on May 14, 2003, and made findings of fact, conclusions of law, and a recommendation. The panel dismissed the first and second counts of the complaint, finding no clear and convincing evidence that respondent had violated any Disciplinary Rules. See Gov.Bar R. V(6)(H); *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 708 N.E.2d 193, paragraph two of the syllabus. The first count alleged that, to avoid discipline, respondent had induced her former legal assistant to execute a false affidavit claiming that her

law office had prepared a client's file for retrieval. The second count alleged that respondent knew but did not report to relator that a former associate had induced the same legal assistant to provide false testimony to absolve the associate of blame for having missed a hearing. The panel determined that the testimony of the legal assistant, a central witness on these counts, lacked credibility. The panel also found that respondent's counsel had sufficiently reported to relator that respondent had knowledge of claimed misconduct involving the former associate.

{¶3} With respect to the third count, the record shows that respondent deposed her former legal assistant on November 20, 2002, in anticipation of the panel hearing, at the office of one of relator's attorneys. During the proceeding, which was attended by respondent's and relator's legal counsel, respondent conspicuously placed nine audio cassette tapes in front of her former legal assistant. By suggestively labeling the tapes and referring to them during questioning, respondent implied that she had recorded conversations with the legal assistant that could impeach and personally embarrass the legal assistant. Respondent also intermittently cautioned the legal assistant to answer truthfully or risk perjuring herself.

{¶4} Respondent's suggestive display of the cassettes was intended to mislead the legal assistant. The tapes were actually blank or held information unrelated to the legal assistant, and consequently, respondent did not offer the tapes as evidence during or after the deposition. The panel found that respondent had thereby violated DR 1-102(A)(4), which prohibits a lawyer from engaging in conduct involving fraud, deceit, dishonesty, or misrepresentation, and DR 7-106(C)(1), which prohibits a lawyer appearing in a professional capacity before a tribunal from alluding to any matter that will not be supported by admissible evidence.

{¶5} In recommending a sanction for this misconduct, the panel reviewed the mitigating and aggravating considerations listed in Section 10 of the

Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline of the Supreme Court. The panel determined that in attempting to mislead the legal assistant, respondent "engaged in a deceptive practice during the disciplinary process." The panel found no other aggravating factors and identified no mitigating factors.

{¶6} Having found that respondent violated DR 1-102(A)(4), the panel concluded that she should receive an actual suspension of her law license, the sanction ordinarily required for this infraction. See *Cincinnati Bar Assn. v. Florez*, 98 Ohio St.3d 448, 2003-Ohio-1730, 786 N.E.2d 875, and *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237. But, see, *Cleveland Bar Assn. v. Co*x, 98 Ohio St.3d 420, 2003-Ohio-1553, 786 N.E.2d 454, ¶ 18; *Toledo Bar Assn. v. Kramer* (2000), 89 Ohio St.3d 321, 323, 731 N.E.2d 643 (A lesser sanction may be appropriate for an attorney's violation of DR 1-102[A][4] where the misconduct is an isolated incident in an otherwise unblemished legal career). The panel also found respondent's misconduct similar to that committed in *Columbus Bar Assn. v. King* (1998), 84 Ohio St.3d 174, 702 N.E.2d 862, wherein two attorneys were disciplined for surreptitiously taping a telephone call in which one of them had solicited arguably slanderous remarks about his client from an opposing party and then added the slander allegation to the pending claim. In *King*, we suspended one attorney from the practice of law for one year, suspended the other attorney for six months, and conditionally stayed both suspensions. Here, the panel recommended suspending respondent's license for one year and staying six months of that sanction on the condition that she engage in no further misconduct. Pursuant to Gov.Bar R. V(6)(L), the board adopted the panel's findings and recommendation.

{¶7} Relator urges us to find that respondent lied during the investigation leading to Count I about whether she had actually returned the client's case file that was the subject of the prior grievance against her. In

response to relator's inquiry, respondent assured the investigator in writing that the client's file had been copied and made available to the client, and she included with her response the legal assistant's affidavit, later recanted, to this effect. Relator argues that this representation is contradicted by other documents in which respondent stated that she would not release the file until the client paid her legal fees, by the client's new attorneys, who testified that respondent did not comply with their requests for the file, and by her former client, who testified that she never received the file. Relator insists that these contradictions discredit respondent's story, notwithstanding the legal assistant's unreliable account of what may or may not have happened after the client discharged respondent.

{¶8} Upon review, we acknowledge that these inconsistencies exist; however, they do not warrant disregarding the panel's findings as adopted by the board. The panel observed the witnesses firsthand and thus possessed an enviable vantage point in assessing the credibility and weight of their testimony. For this reason, we ordinarily defer to a panel's credibility determinations in our independent review of professional discipline cases unless the record weighs heavily against those findings. *Cleveland Bar Assn. v. Cleary* (2001), 93 Ohio St.3d 191, 198, 754 N.E.2d 235.

{¶9} Here, the panel questioned respondent at length and unanimously dismissed Count I after finding insufficient evidence to conclude that she had acted dishonestly. Supplanting the panel's judgment on this issue would require proof of the variety in *Findlay/Hancock Cty. Bar Assn. v. Filkins* (2000), 90 Ohio St.3d 1, 734 N.E.2d 764, in which we rejected recommended findings of misconduct because the panel had relied largely on the uncorroborated testimony of a witness who had admittedly lied often, including once under oath. The inconsistencies asserted by relator simply do not compare. Relator's first objection, therefore, is overruled, and we adopt the recommendation to dismiss Count I.

**{¶10}** Additionally, relator objects to the panel's unanimous decision to dismiss Count II. Relator argues that respondent had a duty to report under DR 1-103(A) (a lawyer possessing unprivileged knowledge of misconduct as defined by DR 1-102 shall report such knowledge to an appropriate authority) that her legal assistant told respondent that she had testified falsely at the direction of respondent's former associate. We disagree, again out of deference to the panel. The panel found that the allegations in Count II depended "in large part" on the legal assistant's "frail credibility." We take from this that the panel considered the legal assistant's claim so inherently unreliable that, in retrospect, it did not invoke the reporting requirement in DR 1-103(A), regardless of whether the claim ultimately turned out to be true. Moreover, the panel found that respondent's counsel did report to relator other allegations of misconduct against the associate that were based on respondent's personal experience. Accordingly, relator's second objection is also overruled, and Count II is dismissed.

**{¶11}** In her objections to the panel's findings as adopted by the board relative to Count III, respondent asserts that while DR 7-106(C)(1) prohibits an attorney's reference to matters that will not be supported by admissible evidence when appearing "before a tribunal," it does not apply to the deposition respondent conducted at the office of relator's attorney. Respondent also contends that her conduct during the deposition of the legal assistant did not constitute a violation of DR 1-102(A)(4). We reject both arguments.

**{¶12}** "Tribunal" is defined in the Code of Professional Responsibility as "all courts and all other adjudicatory bodies," but we have not construed this term as narrowly as respondent urges us to do today. In *Disciplinary Counsel v. Levin* (1988), 35 Ohio St.3d 4, 517 N.E.2d 892, an attorney became verbally abusive during a deposition. We found that in making his insulting and profane remarks, the attorney had acted before a tribunal in violation of DR 7-106(C)(2) (asking any question before a tribunal that the attorney has no reason to believe is relevant

to the case and that is intended to degrade a witness or other person), 7-106(C)(5) (failing to comply with known local customs of courtesy or practice while appearing before a tribunal), 7-106(C)(6) (engaging in undignified or discourteous conduct degrading to a tribunal), and 7-106(C)(7) (intentionally or habitually violating an established rule of procedure or evidence).  Id. at 7, 517 N.E.2d 892.

{¶13}  We continue to adhere to this view.  Although depositions are conventionally conducted without direct judicial supervision, such proceedings are nevertheless always subject to judicial intervention and oversight under Civ.R. 30(D) (court may terminate or limit the scope of a deposition upon a showing of bad faith or harassment on the part of a deponent or party) and, thus, are within the boundaries of the judicial setting.  And because there is ordinarily no presiding authority, "it is even more incumbent upon attorneys to conduct themselves in a professional and civil manner during a deposition."  *Matter of Golden* (1998), 329 S.C. 335, 343, 496 S.E.2d 619.

{¶14}  Depositions may be used to investigate an adversary's case or to preserve testimony for impeachment or for the record.  Civ.R. 32(A).  Any deposition that is to be used as evidence must generally be filed in court.  Id.  It therefore follows that these proceedings are to be conducted as if before a tribunal, including in accordance with DR 7-106(C)(1).  In fact, depositions taken in Gov.Bar R. V proceedings must be filed with the board pursuant to Civ.R. 32. Section 3(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline.

{¶15}  Respondent, however, urges us to distinguish trial conduct from "discovery depositions," arguing that the latter require greater freedom of inquiry into matters that may be relevant but inadmissible.  See Civ.R. 26(B)(1) (inadmissible evidence reasonably calculated to lead to the discovery of admissible evidence is also discoverable).  This was particularly the case, respondent insists, in the deposition of the legal assistant.  She argues that wide

latitude was imperative during that proceeding to draw honest testimony from a theretofore untrustworthy witness and that use of the audio cassette tapes was merely a tactic intended to achieve this legitimate end.

{¶16} We recognize that the discovery process, particularly the pursuit of information through deposition, cannot be overly restricted if it is to remain effective. We must draw the line, however, when an attorney engages in subterfuge that intimidates a witness. While respondent's primary purpose during the legal assistant's deposition may have been to elicit the truth, her tactic also tricked the legal assistant into thinking that the revelation of embarrassing confidences was at stake.

{¶17} Throughout these proceedings, respondent has asserted that her "bluff" worked. Regardless, the success of her tactic is not at issue, and respondent can not, with any degree of certainty, assert that her witness would not have testified truthfully in the absence of her subterfuge. Further, while such deception may induce truthful testimony, it is just as likely to elicit lies if a witness believes that lies will offer security from the false threat. Respondent's deceitful tactic intimidated her witness by creating the false impression that respondent possessed compromising personal information that she could offer as evidence. For these reasons, we agree that respondent violated DR 1-102(A)(4) and 7-106(C)(1).

{¶18} As a sanction for respondent's misconduct, relator advocates respondent's indefinite suspension from the practice of law based on arguments that respondent committed misconduct in connection with Counts I and II, in addition to Count III. Respondent, on the other hand, argues that the complaint should be dismissed. In the alternative, she asserts that the panel and board ignored mitigating evidence and, therefore, the sanction recommended by the board—a one-year suspension with six months conditionally stayed—is too severe. Respondent proposes that a public reprimand would be more appropriate.

**{¶19}** We find that either proposed sanction, as well as the board's recommendation, would be incommensurate with respondent's misconduct. An indefinite suspension would be too harsh in light of our dismissal of Counts I and II, while no more than a public reprimand would unduly minimize the severity of respondent's conduct.

**{¶20}** As to the board's recommendation, we find that there are mitigating factors for which the board did not account. Specifically, the panel and board did not mention that there is no evidence of respondent's having been professionally disciplined before now, the grievances lodged against her notwithstanding. Moreover, respondent has a professional history of dutiful service to clients, including the client whose case file she supposedly has not returned. In fact, another of respondent's associates testified that respondent had worked tirelessly on this client's behalf for years while representing her in a contentious divorce and related allegations of abuse. Finally, respondent cooperated in these proceedings.

**{¶21}** On the basis of these mitigating factors, we temper our disposition in accordance with the rule that a stayed suspension is sometimes warranted by mitigating concerns, notwithstanding a violation of DR 1-102(A)(4). See *Disciplinary Counsel v. Markijohn,* 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24 (attorney who falsely reported contributions to his law firm's retirement plan violated DR 1-102[A][4], but his good character, lack of any disciplinary record, and personal difficulties were sufficiently mitigating to stay the ordered six-month suspension), and *Disciplinary Counsel v. Wrenn,* 99 Ohio St.3d 222, 2003-Ohio-3288, 790 N.E.2d 1195 (assistant prosecutor who did not disclose potentially exculpatory DNA results violated DR 1-102[A][4] and three other Disciplinary Rules, but his background and acknowledged poor judgment were sufficiently mitigating to stay the ordered six-month suspension).

{¶22} Consistent with this authority, we order that respondent be suspended from the practice of law in Ohio for six months, and we stay this sanction on the condition that she engage in no further misconduct. If respondent violates this condition, the stay will be lifted, and respondent will serve the entire period of actual suspension. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

MOYER, C.J., and F.E. SWEENEY, J., dissent.

_____

MOYER, C.J., dissenting.

{¶23} I respectfully dissent from the sanction imposed on respondent by the majority. For the reasons that follow, I would suspend respondent for one year and stay six months of the suspension on condition that she engage in no further misconduct.

I

Erroneous Dismissal of Count I

{¶24} The board dismissed Count I of relator's complaint. Count I alleged facts that, if true, warrant the conclusion that respondent lied to the bar association in a written response to a disciplinary grievance filed against her in 2000 and that, to support that lie, she provided the bar association with evidence she knew to be misleading at best, i.e., an affidavit that had been executed by her legal assistant.

{¶25} In correspondence related to that grievance, respondent stated that a former client had, in fact, been "given copies of all papers in her file" at her request. To support that assertion, respondent provided the bar association with an affidavit executed by her legal assistant representing that the assistant had "prepared a complete photocopy of [the former client's] domestic relations file,

and left it at the front desk for [the former client] to pick up" in January 1999. The legal assistant averred in her affidavit that she assumed that the file had been "picked up by [the former client] as it is no longer at the front desk."

{¶26} If the majority views the first count of the complaint as constituting a charge that respondent *solicited* the execution of a false affidavit, then the board's dismissal of Count I arguably is justified. The respondent testified that she did not *ask* the legal assistant to prepare the affidavit (although she did declare that she felt justified in supplying the bar association with the affidavit because its contents reflected "what Jennifer told [her] to be true"). The legal assistant testified that the respondent had asked her to prepare the false affidavit. In view of the board's conclusion that the legal assistant lacked credibility, the relator did not provide clear and convincing evidence to rebut respondent's testimony that she did not ask the legal assistant to execute a false affidavit.

{¶27} When the first count of the complaint is appropriately viewed more broadly, it is clear that the relator did establish, by clear and convincing evidence, that respondent had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, even if the testimony of the legal assistant is disregarded for lack of credibility. The legal assistant's affidavit, offered by the respondent, constitutes a representation by the respondent that the former client was presented with a complete copy of her file in January 1999.

{¶28} The record contains clear and convincing evidence that the respondent was well aware that the client had not received a copy of her file in January 1999. In December 1998, respondent wrote her client, indicating that she would provide a copy of the file only upon receipt of a check for $15,000. On February 23, 1999, subsequent to the time period referenced in the legal assistant's affidavit, respondent wrote to the client's new attorney, "If I receive a check of $3,000.00, I will, immediately within 24 hours, turn over her file to

you." She added, "If I do not receive that token payment, you will not be receiving any files from my office." In November 1999, respondent filed answers to interrogatories served upon her by her former client, whom she had sued for the payment of legal fees. In those answers, respondent asserted that she would not produce her former client's file because it "is too voluminous to copy, and also there is an attorney's lien on this information." She further answered, "The file is available for inspection at any time in my office. I will also make it available for the court hearing. However, I will not release it because of the lien."

{¶29} Her representation to the bar that the former client had in fact received the file was clearly and convincingly proven to be "conduct involving dishonesty, fraud, deceit, or misrepresentation" in violation of DR 1-102(A)(4). Therefore, I do not believe the board should have dismissed Count I of the complaint.

II

Sanction

{¶30} Respondent acknowledges that she engaged in a deceptive practice while deposing her former legal assistant during the course of the bar association's disciplinary investigation of her. Yet she shows no remorse for that conduct. She continues to assert that her intentional use of deceit was justified and implies that it is perfectly appropriate to deceive a witness in the course of a deposition in order to "encourage" the witness to testify truthfully. She thus apparently believes that the ends (obtaining truthful testimony from a witness) justify the means (intentionally deceiving a witness).

{¶31} Respondent affirmatively argues that it was appropriate to intentionally create a false impression in the mind of the deposition witness, her former legal assistant, because the witness herself had been untruthful in the past. She asserts that attorneys frequently engage in competitive endeavors "no different" from other activities in which "two opposing sides vie for victory" and

characterizes her actions as meeting "fire with fire." She analogizes litigation to a game of poker, in which "bluffs" are commonly employed.

**{¶32}** In my view, however, attorneys must be held to ethical standards higher than those expected of poker players. Attorneys are not justified in employing deception even when they believe that the person with whom they are dealing is untruthful. Were we to condone such conduct, the practice of law would likely quickly slide to the lowest levels of ethical behavior. The maxim taught us as children remains valid: two wrongs do not make a right.

**{¶33}** The board recommended that respondent be suspended for a period of one year, with six months of the suspension to be stayed on condition that she engage in no further misconduct. I agree with that recommendation. I believe that the mitigation cited by the majority is counterbalanced by the respondent's failure to appreciate the wrongfulness of her conduct. The sanction imposed by the majority sends the wrong message to the bar and to the public. I would adopt the recommendation of the board.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.

_____

Clements, Mahin & Cohen, L.L.P., and William E. Clements; Rendigs, Fry, Kiely & Dennis, L.L.P., and Carolyn A. Taggart, for relator.

Timothy A. Smith and Lester S. Potash, for respondent.

_____