Per Curiam.
{¶ 1} Respondent, Aaron James Brockler of Lakewood, Ohio, Attorney Registration No. 0078205, was admitted to the practice of law in Ohio in 2004. In an April 7, 2014 complaint, relator, disciplinary counsel, charged Brockler with engaging in professional misconduct while he served as the assistant Cuyahoga County prosecutor assigned to a murder case. Specifically, relator alleged that while investigating the shooting death of Kenneth “Blue” Adams, Brockler created a fictitious Facebook account and used it to contact the alibi witnesses of Damon Dunn, who had been indicted for the murder.
{¶ 2} The parties entered into stipulations of fact and submitted 15 stipulated exhibits. After a two-day hearing, a panel of the Board of Professional Conduct issued a report finding that Brockler’s use of the fictitious Facebook account to contact the alibi witnesses involved dishonesty, fraud, deceit, or misrepresentation and that it prejudiced the administration of justice. It recommended, however, that we dismiss an alleged violation arising from certain statements that Brockler made to the media.
*271 {¶ 3} Citing substantial mitigating evidence and finding that Brockler’s misconduct was an isolated incident in an otherwise notable legal career, the panel recommended that he be suspended for one year, with the suspension fully stayed on conditions. The board adopted the panel’s report in its entirety, and neither party has filed objections. We adopt the board’s findings of fact and conclusions of law and suspend Brockler from the practice of law in Ohio for one year, fully stayed on conditions.
Misconduct
{¶ 4} Before he was indicted, Dunn denied any involvement in Adams’s death and told Cleveland police that at the time of the murder, he was with his girlfriend, Sarah Mossor, and her friend Marquita Lewis. Brockler did not believe that Dunn’s alibi was true, but Mossor and Lewis refused to talk with him on numerous occasions when he identified himself as the assistant prosecutor assigned to the case.
{¶ 5} As part of his investigation, Brockler listened to recordings of telephone calls that Dunn had made from the Cuyahoga County Jail. On the morning of December 14, 2012, he listened to a recording of a heated conversation in which Dunn and Mossor argued over Dunn’s fear that Mossor would not be a reliable witness and Mossor’s belief that Dunn had not been faithful to her. Mossor suspected that Dunn had had a romantic relationship with a woman named “Taisha” and indicated that if her suspicion was true, she would end her relationship with Dunn. Believing that Mossor’s relationship with Dunn was near a breaking point, Brockler saw an opportunity to exploit her feelings of distrust and get her to recant her support for Dunn.
{¶ 6} Recalling a Facebook ruse he had used in a prior case, Brockler planned to create a fictitious Facebook identity to contact Mossor. He attempted to obtain assistance from several Cleveland police detectives and the chief investigator in the prosecutor’s office, but they were not available. Believing that time was of the essence, Brockler decided to proceed with the Facebook ruse on bis own approximately one hour after he heard the recording of Mossor and Dunn’s conversation. He created a Facebook account using the pseudonym “Taisha Little,” a photograph of an African-American female that he downloaded from the Internet, and information that he gleaned from Dunn’s jailhouse telephone calls. He also added pictures, group affiliations, and “friends” he selected based on Dunn’s telephone calls and Facebook page.
{¶ 7} Posing as Little, Brockler simultaneously contacted Mossor and Lewis in separate Facebook chats. He falsely represented that Little had been involved with Dunn, that she had an 18-month-old child with him, and that she needed him to be released from jail so that he could provide child support. He also discussed Dunn’s alibi as though it were false in an attempt to get Mossor and *272 Lewis to admit that they were lying for Dunn (or would lie for him in the future) and to convince them to speak with the prosecutor.
{¶ 8} After chatting for several hours, Brockler sensed that Mossor and Lewis were suspicious, so he shut down the chat and deleted the fictitious account. He testified that he printed copies of the chats and placed them in a file — with the intent to provide copies to defense counsel — before he deleted the account, but those copies were never found. He attended five pretrial conferences from January through April 2013 but did not disclose the circumstances or content of his conversations with Mossor or Lewis.
{¶ 9} Brockler was scheduled to take an extended medical leave beginning April 16, 2013, and assistant prosecutor Kevin Filiatraut was assigned to handle the Dunn case in his absence. Brockler gave his file to Filiatraut, reviewed the case with him, and attended a pretrial conference with him. Brockler also disclosed that he might need to be a witness at trial because both Mossor and Lewis had told him they would not support Dunn’s alibi, although they were afraid to say so in court. Brockler did not disclose how he obtained that information.
{¶ 10} On the second day of Brockler’s leave and less than one week before Dunn’s trial, a police detective gave Filiatraut several documents, including a transcript of Lewis’s chat with “Taisha Little” (obtained from Lewis) and Lewis’s written statement about the chat. Filiatraut immediately made the documents available to defense counsel and began to investigate Little.
{¶ 11} Although Filiatraut quickly informed Brockler about this new information, Brockler waited nearly three weeks to disclose that he was “Taisha Little.” Upon learning of Brockler’s ruse, Filiatraut reported this information to his superiors. The prosecutor’s office withdrew from the case and the court appointed the attorney general to serve as a special prosecutor. Shortly after Brockler returned from his medical leave in June 2013, his employment was terminated.
{¶ 12} Soon thereafter, Brockler spoke with reporters from the Cleveland Plain Dealer and a local television affiliate in response to Cuyahoga County Prosecuting Attorney Timothy McGinty’s statements that Brockler was fired for his unethical conduct in creating false evidence, lying to witnesses and another prosecutor, and damaging the prosecution’s chances in a murder case in which an innocent man was killed at work.
{¶ 13} The subsequently published article and broadcasted interview included statements by Brockler — which he does not dispute — to the effect that (1) prosecutors have long engaged in ruses to obtain the truth, (2) his firing was an overreaction because he only did what the police should have done, (3) he engaged in an investigative ruse to uncover the truth and keep a murderer behind bars, (4) the public was better off because of his actions, (5) if he had not *273 taken these actions, a murderer might be walking the streets, (6) he promised the victim’s mother that he would not let a horrible killer walk out of the courthouse to kill someone else, and (7) McGinty chose to follow the technical rules of ethics, while he chose to protect the public.
{¶ 14} Approximately one year after Brockler’s termination, Dunn was convicted of aggravated murder, murder, felonious assault, and having weapons while under disability. The parties stipulated in January 2015 that his conviction was on appeal, but it has since been affirmed, see State v. Dunn, 8th Dist. Cuyahoga No. CR-12-568849-A, 2015-Ohio-3138, 2015 WL 4656534.
{¶ 15} Brockler admitted that the Facebook ruse violated the plain language of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), but he urged the board to carve out an exception for “prosecutorial investigation deception.”
{¶ 16} Noting that a comment to Prof.Cond.R. 8.4 already recognizes an exception for lawyers who supervise or advise nonlawyers about lawful covert investigative activities and that this court has found in two cases that lawyers in private practice violated the analogous provisions of DR 1-102(A)(4) by personally engaging in investigatory deceptions, the board refused to carve out a broader exception to the rule. See Prof.Cond.R. 8.4, Comment 2A; Columbus Bar Assn. v. King, 84 Ohio St.3d 174, 702 N.E.2d 862 (1998) (finding that two attorneys engaged in dishonest conduct by conspiring for one of them to place a phone call while posing as someone else in order to generate evidence in furtherance of a client’s case); Cincinnati Bar Assn. v. Statzer, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 17 (finding that an attorney engaged in dishonesty, fraud, deceit, or misrepresentation when she intimidated a deposition witness by creating the false impression that she possessed compromising personal information that could be offered as evidence).
{¶ 17} Instead, the board found that Prof.Cond.R. 8.4(c) requires an assistant prosecutor to refrain from dishonesty, fraud, deceit, or misrepresentation when personally engaging in investigatory activity and that Brockler’s Facebook ruse therefore violated the rule.
{¶ 18} Brockler argued that his conduct did not violate Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) as charged in the complaint because it encouraged witnesses to come forward and tell the truth. But the board found that his subterfuge prejudiced the administration of justice because it had the potential to induce false testimony, injected significant new issues into the case shortly before trial, and materially delayed the resolution of the case by requiring further investigation and the appointment of a special prosecutor.
*274 {¶ 19} Relator’s complaint also alleged that Brockler’s statements to the media violated Prof.Cond.R. 3.6(a) (prohibiting a lawyer who has participated in the investigation or litigation of a matter from making extrajudicial statements that he knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter). While the board did not condone Brockler’s statements, it found that relator failed to carry his burden of proving not only that the statements were made but that Brockler knew or reasonably should have known that his statements would have a substantial likelihood of materially prejudicing Dunn’s trial. Therefore, the board recommended that we dismiss the alleged violation of Prof.Cond.R. 3.6(a).
Sanction
{¶ 20} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. Stark Cty. Bar Assn. v. Buttacavoli, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Gov.Bar R. V(13).
{¶ 21} As an aggravating factor, the board found that Brockler’s deceptions and misrepresentations in his contacts with Mossor and Lewis resulted in multiple violations of Prof.Cond.R. 8.4(c) and (d), though it treated them as a single instance of misconduct. See Gov.Bar R. V(13)(B)(4). The board also found that his extrajudicial statements to the media, deflecting blame for his own misconduct to the police department and the prosecutor’s office, undermined the public’s confidence in the criminal-justice process. See Gov.Bar R. V(13)(A) (requiring the board to consider all relevant factors in determining the appropriate sanction for a lawyer’s misconduct).
{¶ 22} In mitigation, the board found that Brockler did not have a prior disciplinary record, made a full and free disclosure and cooperated in the disciplinary process, submitted numerous letters attesting to his good character and reputation for honesty, and acknowledged that the loss of his “dream job” was a form of penalty. See Gov.Bar R. V(13)(C)(1), (4), (5), and (6). Although Brockler’s use of deception violated core ethical values, the board also found that he was not motivated by self-interest, because he honestly — albeit erroneously— believed that his covert use of Facebook was an effective and acceptable tactic akin to more traditional investigative tactics such as staged drug buys and the use of undercover informants. See Gov.Bar R. V(13)(C)(2).
{¶ 23} Despite advocating for a public-policy exception for deceptive prosecutorial investigation tactics, Brockler admitted that his conduct violated the plain language of Prof.Cond.R. 8.4(c) and argued for no more than a stayed six-month *275 suspension. Relator, in contrast, argued that Brockler should serve an actual suspension from the practice of law, but he did not suggest any specific duration.
{¶ 24} The board acknowledged that misconduct involving dishonesty, fraud, deceit, or misrepresentation generally warrants an actual suspension from the practice of law. See, e.g., Disciplinary Counsel v. Karris, 129 Ohio St.3d 499, 2011-Ohio-4243, 954 N.E.2d 118, ¶ 16; Disciplinary Counsel v. Fowerbaugh, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus.
{¶ 25} But the board also recognized that we may deviate from that rule in the presence of significant mitigating evidence. See Disciplinary Counsel v. Potter, 126 Ohio St.3d 50, 2010-Ohio-2521, 930 N.E.2d 307 (absence of a prior disciplinary record, efforts to rectify the consequences of the misconduct, full cooperation in the investigation, self-reporting, and evidence of good character and reputation apart from the charged misconduct sufficient to fully stay 12-month suspension for violating fiduciary duty as the executor of an estate); Disciplinary Counsel v. Niermeyer, 119 Ohio St.3d 99, 2008-Ohio-3824, 892 N.E.2d 434, ¶ 12-13 (absence of prior misconduct, self-reporting, cooperation in the disciplinary process, acceptance of responsibility for misconduct, and evidence of good character and reputation sufficient to stay the entire 12-month suspension for altering a document to make it appear that it had been timely filed). See also King, 84 Ohio St.3d 174, 702 N.E.2d 862 (imposing a fully stayed one-year suspension based upon the presence of significant mitigating evidence); Statzer, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117 (imposing a fully stayed six-month suspension based upon the presence of significant mitigating evidence).
{¶ 26} Noting the substantial mitigating factors present in this case — including the board’s finding that the misconduct was an isolated incident in an otherwise notable legal career — the board recommends that we suspend Brockler for one year, but stay that suspension on the conditions that he engage in no further misconduct and that he pay the costs of this action.
{¶ 27} Having determined that the board’s findings of fact and conclusions of law are supported by the record and the law, we adopt the board’s report, find that Brockler’s use of a deceptive investigative technique to contact Dunn’s alibi witnesses violated Prof.Cond.R. 8.4(c) and (d), and dismiss the alleged violation of Prof.Cond.R. 3.6(a). We also find that a one-year suspension, fully stayed on the conditions recommended by the board, is the appropriate sanction for Brockler’s misconduct.
{¶ 28} Accordingly, Aaron James Brockler is suspended from the practice of law in Ohio for one year, fully stayed on the conditions that he engage in no further misconduct and pay the costs of this proceeding. If he fails to comply *276 with the conditions of the stay, the stay will be lifted, and he shall serve the full one-year suspension. Costs are taxed to Brockler.
Judgment accordingly.
Pfeifer, Kennedy, French, and O’Neill, JJ., concur.
O’Connor, C.J., dissents with an opinion in which Lanzinger, J., joins.
O’Donnell, J.-, dissents, with opinion.