[Cite as *State v. Braswell*, 2018-Ohio-3208.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-16-1197

        Appellee                         Trial Court No. CR0201601685

v.

Anthony Braswell                        **DECISION AND JUDGMENT**

        Appellant                        Decided:  August 10, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Mollie B. Hojnicki-Mathieson, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Following a jury trial, the Lucas County Court of Common Pleas convicted the defendant-appellant, Anthony Braswell, on a single count of burglary.  On appeal, Braswell challenges the evidence against him and his prison sentence.  He also claims that his trial counsel was ineffective.  As set forth below, we find Braswell received a

constitutionally fair trial and that his sentence is not contrary to law. Accordingly, we affirm the judgment of the lower court.

**Facts and Procedural History**

{¶ 2} The following evidence was offered at trial. The accuser in this case, "S.L.," is Braswell's former girlfriend. S.L.'s relationship with Braswell ended in 2008 or 2009.

On Friday, March 25, 2016, S.L. was at her house, located at 902 Prospect Street, in Toledo, Ohio. S.L. shared the home with her boyfriend, and her boyfriend's son. S.L. had arranged to take the boy to her sister's for the night because she worked the next morning. Just before leaving for her sister's, S.L. received a phone call from her friend, A.G., who said she was on her way over and asked to spend the night. S.L. agreed and responded that she would be right back. The time was 11:00 p.m. S.L. locked the doors as she left.

{¶ 3} Around 11:05, as she was dropping off the boy for the night, S.L. received a phone call from A.G. who was, by then, parked outside of S.L.'s house on Prospect. A.G. reported that she had just seen Braswell exit S.L.'s home and that the front door was "kicked in." A.G. recognized Braswell from having met him before. S.L. immediately returned home, to find that the doorframe and front door were busted and many items were missing, including an "Xbox" gaming system, three televisions and a laptop computer. S.L. also found an Xbox power cord on her front lawn.

{¶ 4} S.L. testified that Braswell returned to S.L.'s house the next day, March 26, 2016, and attempted to gain entry through the back door. S.L. and A.G. heard glass break

2.

and then saw Braswell run away from the house though the back yard. S.L. called 911 at 2:47 p.m. to report the previous night's burglary. When the police did not immediately arrive, she went to the police station to make an in-person report, but the police sent her home and instructed her to wait for the police to come to her house. In the early evening, Toledo Police Officer Dylan James and his partner arrived at S.L.'s home and took her statement. Officer James testified that S.L.'s front door appeared to have been forced open. Later, James reported the incident to Toledo Police Detective Perry Waddell.

{¶ 5} Waddell met with S.L. on Monday, March 28, 2016. Two days later, Braswell called S.L. and told her that his probation officer had contacted him and that there was a warrant out for his arrest. Braswell then continued to contact S.L. She testified that, "the first couple [of calls] were kind of [him] asking me not to go to court, not to put him in jail." A couple of days later, Braswell "finally admitted" to breaking into her house. S.L. testified that Braswell "called me crying. He said, sorry, and [asked] why am I putting him in jail because I never did it before." Braswell also told her that he and his current girlfriend had gotten into a fight, which caused him to be upset with S.L because, in S.L.'s own words, "he was upset at me because he would not have been with her if he was with me, so that was the reason he had broke into my house." In all, Braswell called S.L. about 10 to 15 times.

{¶ 6} S.L.'s grandmother, "F.F.," listened to one of the calls. F.F. knew Braswell "very well" and was familiar with his voice. F.F. testified that, during the call, she heard Braswell "ask [S.L.] not to have him arrested * * * [and] he apologized three different

3.

times for it." According to F.F., Braswell "did not come right out and say that he broke in or stole anything. He just apologized for it."

{¶ 7} A Lucas County Grand Jury indicted Braswell on April 13, 2016, for burglary, in violation of R.C. 2911.12(A)(2) and (D), a felony of the second degree. Following a two-day trial, beginning on August 16, 2016, Braswell was found guilty. By judgment entry dated August 23, 2016, the trial court sentenced Braswell to serve 48 months in prison. The court sentenced him to an additional prison term of 12 months for violating the terms of his community control in another case (No. CR0201501446). The court ordered the two terms to be served consecutively to one another. Through appointed appellate counsel, Braswell appealed and assigns three assignments of error for our review.

> First Assignment of Error: The evidence at appellant's trial was insufficient to support the conviction and appellant's conviction was against the manifest weight of the evidence.

> Second Assignment of Error: Appellant was denied effective assistance of counsel as guaranteed by the United States and Ohio Constitutions.

> Third Assignment of Error: The trial court erred when it imposed consecutive sentences.

{¶ 8} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*,

4.

78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  We examine the evidence in the light most favorable to the state and decide whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78.

{¶ 9} Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *Thompkins* at 386.  We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact.  *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001); *Jenks* at 273.

{¶ 10} Braswell was charged and convicted of one count of burglary, in violation of R.C. 2911.12(A)(2) which provides that "No person, by force, stealth, or deception, shall do any of the following: * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person * * * is present or likely to be present, with purpose to commit in the habitation any criminal offense."

{¶ 11} Braswell argues that the state failed "to establish that it was [he] who trespassed at [S.L.'s house] for the purpose of committing the criminal offense of theft." Braswell complains that no evidence was presented that he entered S.L.'s house "by force, stealth, or deception" or that he committed a theft offense while inside.  Braswell points specifically to a lack of any physical evidence, like fingerprints and shoeprints

5.

tying him to the scene of the crime and the fact that no direct evidence was offered that he removed any items from the house.

{¶ 12} Direct evidence of a fact is not required; a conviction may rest on circumstantial evidence. *State v. Jackson*, 57 Ohio St.3d 29, 38, 565 N.E.2d 549 (1991). Here, S.L. testified that she did not give Braswell permission to enter her home and that, when she left at 11:00 p.m., her home was in order and locked. Moreover, A.G.'s testimony, if believed, established that Braswell gained access to the interior of the property inasmuch as she observed him exiting it, at 11:05 p.m. By that time, S.L's door and doorframe had been damaged. There is also evidence in the record, by way of S.L. and corroborated by F.F., that Braswell admitted to the crime. We find that a jury could reasonably conclude from these facts that Braswell gained entry to the home by force and that he did so for the purpose of committing a theft offense.

{¶ 13} The remainder of Braswell's arguments pertain to the credibility of witnesses, which we address in response to his argument that his conviction is against the manifest weight of the evidence. In determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks*, paragraph two of the syllabus; *Yarbrough* at ¶ 79 (Noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim). In sum, construing this evidence and the reasonable inferences therefrom in a light most favorable to the state, a rational trier of facts could find all of the essential

6.

elements of burglary proven beyond a reasonable doubt. Braswell's conviction is supported by legally sufficient evidence.

{¶ 14} While sufficiency of the evidence examines whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony." *Wilson* at ¶ 25, quoting *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} Braswell argues that S.L.'s testimony was not credible. Initially, S.L. testified that she called 911 immediately to report the burglary, but she did not dispute 911 records that showed no such call by her that night. S.L. explained that she *thought* she had called 911 right away, but she could not be sure because, as she said, "this is the third time that he has done this. So at this point it's not * * * like I'm surprised any

7.

more. * * * So probably me just being frustrated. * * * I thought that I called. If I didn't, I don't remember." Braswell also complains that (1) when S.L. did finally call 911, she failed to identify Braswell as the burglar and (2) S.L. and F.F. each failed to tell the police about Braswell's alleged confession until weeks after-the-fact. The decision, as to whether and to what extent, to believe the testimony of a particular witness is "within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54.

{¶ 16} Braswell also argues that it would have been "implausible" if not "impossible" to have effectuated the theft according to the state's timeline. He cites the state's evidence—that S.L. left her home at 11:00 p.m. and A.G. arrived at 11:05 p.m. Braswell argues that it would have been "impossible for [him] to break the locking mechanism on the front door, force his entry into the home, remove [the stolen items and then] make one needless trip back into the home—all within five minutes. While we agree that the state presented a narrow time line, it was not an impossible one. Moreover, S.L.'s testimony suggests that the timing of Braswell's theft was not happenstance. According to her, Braswell has "let me know he watches me. He's seen me coming out of the house with my boyfriend, his child, and he's let me know that." The jury may have concluded that Braswell waited for an opportunity to break in, knowing that she had stepped out. In any event, "'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" *State v. Brown*, 10th

8.

Dist. Franklin No. 02AP-11, 2002-Ohio-5345, ¶ 10, quoting *State v. Long*, 10th Dist. Franklin No. 96APA04-511, 1997 Ohio App. LEXIS 416.

{¶ 17} Our review reveals that ample evidence supports Braswell's conviction. Indeed, Braswell confessed to the crime, as established by S.L., and corroborated by F.F. The record also reveals a possible motive for his conduct. According to S.L., Braswell was upset with her that the two were no longer "together." In addition, A.G. provided eyewitness testimony that placed Braswell at the scene of the crime within minutes of its occurrence. "Even though some discrepancies do exist, eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable juror could find the eyewitness testimony to be credible." *State v. Jordan*, 10th Dist. Franklin No. 04AP-827, 2005-Ohio-3790, ¶ 14. "'The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury.'" *State v. Roper*, 9th Dist. Summit No. 20836, 2002-Ohio-7321, ¶ 55, quoting *Foster v. California*, 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). Having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered witness credibility, we cannot find that this is one of the "exceptional cases" that "weighs heavily against conviction." *Thompkins* at 387. Braswell's conviction is also not against the manifest weight of the evidence, and his first assignment of error is not well-taken.

In his second assignment of error, Braswell asserts that he was denied his constitutional right to effective counsel. "The Sixth Amendment, applicable to the States

9.

by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions. The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 132 S.Ct. 1399, 1404, 182 L.Ed.2d 379 (2012); *see also* Article I, Section 10 of the Ohio Constitution. To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. When challenging counsel's trial strategy through an ineffective assistance claim on appeal, "the appellant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *'" *State v. Lawson*, 64 Ohio St.3d 336, 341, 595 N.E.2d 902 (1992), quoting *Strickland* at 689. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

{¶ 18} Braswell alleges incidents of ineffective assistance of counsel at every phase of his trial. We address his arguments below.

{¶ 19} **Unprepared for trial.** Braswell cites counsel's request to continue the trial date as evidence that she was not prepared to try his case. Counsel made one such request—to move the trial date from Monday, June 27, 2016, so that she could confer

10.

with her client, interview state witnesses, and explore settlement. Counsel also requested that Braswell be housed in the county jail to further those talks, which the court granted. Counsel proposed a new trial date later that same week, but the trial was ultimately set for August 1, 2016. On that day, the parties appeared in court, and Braswell's counsel asserted that she was "prepared to go." The trial did not proceed, however, because a jury had not been ordered. The court expressed frustration with both sides for failing to communicate with the court. It assured Braswell, however, that he would not be adversely impacted, and the case was reset, and was tried, on August 16, 2016.

{¶ 20} A request for additional time for the purpose of preparing for trial does not amount to ineffective assistance of counsel. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 59 ("Indeed, counsel would have provided ineffective assistance if he knew that he was unprepared and failed to request a continuance."). Also, to the extent that the trial court was displeased with Braswell's lawyer, we are satisfied with its assurance to Braswell that he would "be treated as if none of it [had] happened." We reject Braswell's argument that his counsel was either "unprofessional" or unprepared.

{¶ 21} **Ineffective voir dire.** Next, Braswell argues that counsel made "prejudicial comments harmful to her own client to the jury." Braswell cites counsel's (1) acknowledgment to the jury that she, herself, felt "nervous;" (2) providing the jury with a "summary of her personal life;" (3) telling the jury that the crime of burglary "is really scary. Very scary. I know I've put myself in that position and thought how

11.

freaked out I would be;" and (4) telling the jury that she often does not pay attention to "every word" of jury instructions.

{¶ 22} Upon our review, we found that counsel offered a few details about her own life, because she had to ask "really personal questions about you guys" which made her "nervous." Counsel's attempt to humanize herself and to explain why she had to inquire into the jury's personal lives is neither unprofessional nor ineffective. In addition, while counsel acknowledged that burglary would be "scary" to experience, she in no way intimated that her client was responsible for committing the crime. We find that counsel's statements amounted to nothing more than an attempt to build a rapport with the jury and did not amount to ineffective assistance of counsel. *See, e.g., State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 225 ("Counsel's candid acknowledgement that a horrible murder was committed on a defenseless victim helped to build rapport with the jury.").

{¶ 23} Also, while counsel did say that she "sometimes [doesn't] pay attention to every word" of jury instructions, the context surrounding that comment suggests that she intended to emphasize, not diminish, the importance of those instructions and the jury's role.[1] While counsel could have made the same points, without professing that she

---

[1] The full text of counsel's comment was as follows:

> Before you go back to deliberate, the Judge is going to give you those jury instructions. Listen very, very carefully to those instructions. They are very long. I know I hear them many, many times and sometimes don't pay attention to every word. It's very important that you listen to

herself does not always read jury instructions, we find that her isolated comment, taken in context, was insignificant and does not amount to ineffective assistance of counsel.

{¶ 24} We also reject Braswell's argument that trial counsel was ineffective for failing to exercise a peremptory challenge as to juror No. 11, merely because the juror was a sheriff's deputy. "Decisions on the exercise of peremptory challenges are a part of trial strategy." *State v. Pickens,* 141 Ohio St.3d 462, 2014-Ohio-544, 25 N.E.3d 1023, ¶ 225, citing *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 99. Trial counsel, who observe jurors firsthand, are in a much better position than a reviewing court to determine whether a prospective juror should be peremptorily challenged. *Id.*

{¶ 25} **Failure to provide discovery.** Braswell complains that his counsel failed to provide the state with overhead photographs of S.L.'s home. He concedes, though, that the court allowed their use. Braswell does not explain how counsel's discovery violation resulted in ineffective assistance, much less how he was prejudiced by it. Braswell's complaint, even if true, is not evidence of ineffective assistance of counsel.

---

every word, and it will answer so many of your questions. Listen to the elements required for the burglary conviction and think about the testimony that was given as well. Treat this with the importance that you would treat a marriage proposal or choosing your baby's names. This is a very, very important civic duty, and I appreciate the fact that you all have appeared here today.

13.

{¶ 26} **Failure to subpoena Toledo Police Officer Dylan James**—Braswell complains that his counsel failed to subpoena Officer James. While "[a]n attorney's failure to subpoena a witness is generally within the realm of trial tactics" (and thus not a basis for an ineffective assistance claim), here *Officer James actually testified*, albeit without a subpoena. *State v. Parra*, 6th Dist. Lucas No. L-15-1290, 2017-Ohio-5761, ¶ 11. Therefore, Braswell cannot show that he was prejudiced by his counsel's failure to subpoena him.

{¶ 27} **Ineffective cross-examination and impeachment of A.R.:** Braswell argues that his counsel elicited prejudicial testimony while cross-examining A.R. A.R. testified that she thought Braswell was "violent" and later, testified that she did not want to divulge what kind of car she drove out of fear that Braswell would track her down. We reviewed the passages cited by Braswell. It was not foreseeable, based upon the questions asked by counsel, that A.R. would offer such testimony. And while counsel could, and probably should, have objected, on the basis that her answers were non-responsive, "the decision not to request a limiting instruction is sometimes a tactical one." *State v. Schaim, 65 Ohio St.3d 51,* 61, fn. 9, *600 N.E.2d 661 (1992).* "A competent trial attorney may well eschew objecting * * * in order to minimize jury attention to the damaging material." (Quotations omitted.) *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 90.

{¶ 28} Braswell also faults counsel for failing to impeach A.R. over "the inconsistency between the police reports and testimony," but he fails to identify the

inconsistency or to describe how it was prejudicial. On the other hand, counsel *did* cross-examine A.R. regarding why she gave the police an incorrect home address *and* why the police report indicates that she observed Braswell emerge from the *back* of the house, rather than through the *front door*, as she testified. We note that counsel also elicited from A.R. (1) that she could not identify the type of car that Braswell allegedly drove that night and (2) that she failed to testify truthfully when she said that she had no prior convictions. In sum, Braswell fails to show that counsel was ineffective in her cross-examination and impeachment of A.R.

{¶ 29} Braswell lodges similar arguments with regard to his counsel's examination of S.L., the accuser in this case. First, he complains that counsel failed to object to two instances of hearsay evidence. In one, he that argues counsel should have objected to S.L.'s response when asked how she learned of the burglary. S.L. testified, "[A.G.] called me and told me she [had] seen Anthony [Braswell]."

{¶ 30} Hearsay is "a statement, other than one made by the declarant while testifying * * * offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "But if a statement is offered for another purpose, then it is not hearsay and is admissible." *State v. Beasley*, Slip Opinion No. 2018-Ohio-493, ¶ 170, citing *In re Application of McKinney*, 134 Ohio St.3d 260, 2012-Ohio-5635, 981 N.E.2d 847, ¶ 18 (Statements were admissible because they were offered to show what a bar applicant was told about her termination, not to prove the actual reasons for her termination). Here, S.L.'s testimony was not offered to establish that A.G. actually saw Braswell, but rather

15.

to establish how and when S.L. learned of the burglary, i.e., because A.G. called and told her about it. Such testimony is not hearsay. We hasten to add that, by the time the jury heard that particular testimony, it had already heard from A.G., who testified that she called and reported the burglary to S.L. Thus, even if the alleged statement was inadmissible hearsay, Braswell could not show that the absence of an objection affected the outcome of the trial because the jury already knew about the phone call and its contents.

{¶ 31} Braswell also argues that it was hearsay, and thus objectionable, when S.L testified that "[h]e had his mother call me and try to pay me for my things to not send him to jail." Again, we find that the statement was not hearsay because it was not offered for its truth, i.e., that Braswell's mother actually offered to pay S.L., but rather to show that Braswell was desperate to avoid having S.L. talk to the police, which included enlisting the help of his mother. In any event, given that Braswell failed to identify how the alleged hearsay statements caused him actual prejudice, we cannot find that the result of the proceedings would have been different had counsel objected to either. *See State v. Chandler*, 10th Dist. Franklin No. 10AP-972, 2011-Ohio-3485, ¶ 16 (No prejudice from admission of officer's alleged hearsay testimony, where eyewitness testimony overwhelmingly linked defendant to crimes).

{¶ 32} Next, Braswell argues that counsel was ineffective while cross-examining S.L. because she "opened the door" to Braswell's prior bad acts. During cross-examination, counsel elicited testimony from S.L. that Braswell had broken into her

16.

home three times before and that, on a different occasion, he had ripped out her hair from her head. A review of the transcript reveals that S.L. made those allegations while counsel was in the midst of getting her to acknowledge that S.L. "made no effort to report [the burglary] that night" and, in the other situation, that the police "actually pulled [S.L.] over" for following Braswell. S.L.'s responses, which refer to prior bad acts, reflect her attempt to deflect negative attention away from her and to finger point back at Braswell. As we have previously stated in this decision, matters on which a witness are cross-examined are within the realm of counsel's trial strategy and tactics, and we must generally refrain from second-guessing those decisions. Here, Braswell's counsel presented a defense that the witnesses were lying and that Braswell had nothing to do with the burglary. The cross-examination of S.L. complimented that strategy and promoted counsel's attempts to portray her as untrustworthy. Accordingly, we have no cause to second-guess counsel's method for cross-examining S.L.

{¶ 33} **Failure to move for a mistrial:** Braswell complains that his counsel should have moved for a mistrial after A.G. testified that Braswell spent five years in prison and after S.L. referred to the fact that Braswell had a probation officer. He concedes, however, that the trial court sustained both of counsel's objections and then instructed the jury to disregard both statements. A defendant alleging ineffective assistance of counsel because his attorney failed to move for a mistrial must establish that the trial court probably would have or should have declared a mistrial. *State v. Seiber*, 56 Ohio St.3d 4, 12, 564 N.E.2d 408 (1990). Moreover, a mistrial should not be ordered in a

17.

criminal case merely because some error or irregularity has occurred. *State v. Jones*, 10th Dist. Franklin No. 12AP-1091, 2014-Ohio-674, ¶ 19. It is an extreme remedy and is only appropriate when the substantial rights of the accused or prosecution are adversely affected, and a fair trial is no longer possible. *Illinois v. Somerville*, 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). In this case, we do not find that Braswell's substantial rights were adversely affected. While the references to his criminal sentence in another case and the fact that he had a parole officer were made, the extent of the interruption was brief, and there is no indication that the nature of the statements rendered the trial unfair. Accordingly, we are unable to conclude that defense counsel's performance was deficient for failing to request a mistrial.

{¶ 34} **Miscellaneous and cumulative errors:** As evidence that his counsel was "too inexperienced" to try this case and/or that she was "unprepared," Braswell complains (1) that the trial judge "had to assist counsel" and explain how to publish evidence to the jury and how to impeach a witness; (2) that she relied on her co-counsel to examine a witness; and (3) that counsel could not "figure out" how to use her power point presentation during closing arguments.

{¶ 35} In Ohio, a properly licensed attorney is presumed competent, and the defendant "bears the burden of proving that his trial counsel was ineffective. To carry this burden, [the defendant] must show that counsel made errors so serious that counsel failed to function as the 'the counsel' guaranteed by the Sixth Amendment." *State v.*

18.

*Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988), citing *Strickland*. That counsel was assisted by her co-counsel and/or that the trial judge ensured that the parties complied with the rules of evidence hardly calls into question the competence of Braswell's lawyer. Also, the record establishes that counsel was able to give her previously-prepared closing argument, in full, despite a technical difficulty with the court's equipment. We see no evidence of ineffective representation by Braswell's counsel, much less evidence that, but for counsel's alleged mistakes, the result of the trial would have been different.

{¶ 36} Finally, Braswell argues that the cumulative impact of his counsel's deficient performance warrants reversal of his conviction and a new trial. Because we have found no conduct by trial counsel that rises to the level of drawing the outcome of the case into doubt, we cannot say that counsel's representation fell below an objective standard of reasonable representation. *See Strickland*, 466 U.S. at 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bradley*, 42 Ohio St.3d at 141-142, 538 N.E.2d 373. In this case, there was ample evidence of Braswell's guilt, as provided by the testimony of S.L., A.G., and F.F., and the alleged examples of ineffective assistance of counsel did not affect the outcome of the trial. Braswell's second assignment of error is not well-taken.

{¶ 37} In his final assignment of error, Braswell alleges that the trial court erred in ordering his sentences to be served consecutively. The court ordered that Braswell serve 48 months in prison as to his burglary conviction (the instant case) and an additional 12 months for violating the terms of his community control in case No. CR0201501446.

19.

At sentencing (in the instant case), Braswell stipulated to the community control violation.

{¶ 38} Appellate courts review felony sentences under the standard set forth in R.C. 2953.08(G)(2) which provides that an "appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *See State v Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶ 39} R.C. 2929.14(C)(4) governs the imposition of consecutive sentences. It provides,

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds *any* of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.  (Emphasis added.)

**{¶ 40}** Thus, before ordering consecutive sentences, a trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger he poses to the public, and (3) one of the findings described in subsections (a), (b) or (c).  In addition, "[i]n order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.  A "mere regurgitation of the statute" will satisfy the court's obligation under R.C. 2929.14(C)(4).  *State v. Ault,* 6th Dist. Ottawa No. OT-13-037, 2015-Ohio-556, ¶ 12.

**{¶ 41}** In this case, the trial court made the following findings:

> Being necessary to fulfill the purposes of R.C. 2929.11 and 2929.14(C)(4), consecutive sentence [sic] are necessary to protect the public from future crime or to punish the offender and are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The courts further finds the defendant was on community control; on post release control, the harm caused was great or unusual such that no single prison term is adequate, and the defendant's criminal history demonstrates that consecutive sentences are necessary to protect the public, therefore the sentence in this case is ordered to be served consecutively to the sentence imposed in case CR01501446 for the total period of incarceration of 60 months on both cases with credit for time served on both cases of 276 days.

**{¶ 42}** Based upon the above, the trial court made the requisite, initial findings under R.C. 2929.14(C)(4), i.e., that consecutive sentences were necessary to protect the public/punish Braswell *and* were not disproportionate. The court then found *all three* of the factors set forth in R.C. 2929.14(C)(4)(a)-(c) were present, rather than just one. *Accord State v. Robinson,* 3d Dist. Hancock No. 5-16-13, 2017-Ohio-2703, ¶ 12 ("Although the trial court needed to find only one of the factors provided in R.C. 2929.14(C)(4)(a)-(c), the trial court found all three factors to be present.").

22.

**{¶ 43}** Braswell argues on appeal that his consecutive sentences were improper because "there was no course of criminal conduct" under subsection (b) and because the "evidence was not sufficient for the court to make a finding that [he] was a danger to the public, and thus consecutive sentences were not required to protect the public" under subsection (c). He concedes the applicability of subsection (a), however, and the record supports the trial court's conclusion, under R.C. 2929.14(C)(4)(a), that Braswell committed the instant offense while on community control.

**{¶ 44}** Because only one R.C. 2929.14(C)(4)(a)-(c) factor needs to be supported by the record, we need not address Braswell's argument regarding the trial court's findings under R.C. 2929.14(C)(4)(b) or (c). *See Robinson at ¶ 12-14*; *see also State v. Bray,* 2d Dist. Clark No. 2016-CA-22, 2017-Ohio-118, ¶ 31 ("[T]he findings under R.C. 2929.14(C)(4)(b), alone, support imposition of consecutive sentences."); *State v. Jones,* 8th Dist. Cuyahoga No. 104152, 2016-Ohio-8145, ¶ 8 ("Only one [of the R.C. 2929.14(C)(4)(a)-(c) factors] need to be supported by the record in order to affirm.").

**{¶ 45}** An appellate court may vacate or modify a felony sentence only if we determine by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* Having found no such evidence and having found that the sentence is not contrary to law, we affirm the trial court's imposition of consecutive sentences. Braswell's third assignment of error is not well-taken.

23.

**{¶ 46}** Based on the foregoing, Braswell's conviction and sentence are affirmed.

Braswell is ordered to pay the costs of this appeal pursuant to App.R. 24(A).

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____
JUDGE

Christine E. Mayle, P.J. _____
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.