[Cite as *State v. Harris*, 2023-Ohio-1777.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No.  WD-22-056

      Appellee                                Trial Court No.  20220CR0010

v.

Harley Harris                                    **DECISION AND JUDGMENT**

      Appellant                               Decided:  May 26, 2023

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**SULEK, J.**

**{¶ 1}** Appellant, Harley D. Harris, appeals from the August 15, 2022 judgment entered by the Wood County Court of Common Pleas, sentencing him to four years in prison following his guilty plea to charges of domestic violence, abduction, aggravated assault, and tampering with evidence.  For the reasons that follow, the trial court's judgment is affirmed.

## Statement of the Case and Relevant Facts

{¶ 2} On April 7, 2022, Harris was charged in a ten-count indictment for offenses alleged to have occurred against the victim throughout the month of December 2021. Count 1 charged him with aggravated menacing, a misdemeanor of the first degree. Counts 2, 4, 5, 7, and 8 charged him with domestic violence, all misdemeanors of the first degree, except count 8, which was a felony of the fifth degree. Counts 3, 6, and 9 charged him with abduction, all felonies of the third degree. And count 10 charged him with tampering with evidence, a felony of the third degree.

{¶ 3} Pursuant to a plea agreement, Harris pled guilty to all of the charges except count 1, with count 8 amended to reflect a fourth-degree charge for aggravated assault.

{¶ 4} At the plea hearing, held on June 7, 2022, the state recited the following facts underlying the guilty pleas:

> [PROSECUTOR] * * * Your Honor, had the matter proceeded to trial, the State would have proven the following beyond a reasonable doubt: These events relating to count 2, 3, 4, 5, 6, and 7 all occurred on or about December 1st through December 24th, 2021. The events occurred in Walbridge, Wood County, Ohio at the [victim's] residence. The State would have established its proof through a series of Nest camera videos, which is a camera that was depicting the living room at the Walbridge residence.

2.

As it relates to count 2 and 3, the video would have depicted the defendant screaming at [the victim], placing her in a full nelson, which was restraining her liberty, placing her arms behind her head. She said, you're hurting me. So the restraint and liberty plus the pain, placing her in fear and physical harm would constitute the abduction for that, as well as the domestic violence charge that the State indicated count 2 and 3 would merge at sentencing.

Count 4 is a separate video and a separate circumstance. That depicts the defendant and [the victim] entering the residence, with the defendant immediately enraged upon entering the residence. He does push her on to the couch and begin screaming at her about bills, stating that bills don't mean anything to her, and slapping her in the face with mail and bills is what it appears.

Count 5, is again, a separate video, a separate time. Again, pinning the victim – the defendant pinning the victim onto the couch, slapping her in the face, again this is depicted in the video, and screaming to her that she should slap him in the face.

Count 6 and 7 – again, these are one course of conduct. But again, count 6 and 7 involve strangulation, separate video, separate time, the defendant screaming, I'm going to kill you. During this period, again, [the

victim] is pinned underneath the defendant, so you have restrained of liberty, being the strangulation, and/or placing her in fear and risk of physical harm. So that would be both the domestic violence and the abduction.

And again, we would note that all of this during this time frame occurred between family and household members. These were two individuals that were boyfriend and girlfriend and certainly cohabitating with one another in the same home, living together.

Finally, with respect to counts 8, 9, and 10, each of these offenses occurred on a specific date, an identified date of December 30th, 2021. Walbridge Police did receive a 911 call from a neighbor that the defendant was outside in the victim's car, alleging that he had tried to strike her with the car. The victim was pregnant at this time. The defendant knew she was pregnant. Police did come. Police separated the parties. The defendant did admit to pushing the victim onto the couch. And then you can see on the video the pushing and him dragging her out of the house, dragging her across the living room floor toward the doorway. This abduction is indicted under a different section. There's an (A)(1) and (A)(2). This abduction would be use of force and removing her from the place she is found. So it's a separate section for the dragging her across the room and out the door.

4.

Again, there is physical violence that was mentioned with her being pushed onto the couch while pregnant. There's a stipulation as to a factual basis for the aggravated assault charge. With respect to serious physical harm, we would note that [the victim] did visit the hospital shortly after this event.

And finally, the video shows the defendant ripping the camera down. This is the day police were coming. This is the day police were called and the defendant did rip the camera down, which the State would have indicated would have impaired its ability to be used as evidence in a future criminal proceedings [sic].

{¶ 5} At the sentencing hearing, held on August 9, 2022, the trial court heard from counsel for both sides, the victim, and Harris. The victim stated that the events of December 2021 were "traumatizing" to her. She further stated that her son was present during some of those events and that, as a result, he "struggled." Thereafter, the court addressed Harris, stating, "I'm hoping you realize, that during the month of December of 2021 you, effectively tortured a person."

{¶ 6} Still addressing Harris, the trial court proceeded to sentence him. After finding that Counts 2 and 3 merged for the purpose of sentencing, the court imposed a 24-month term of imprisonment for the offense of abduction. On counts 4 and 5, the trial court imposed a term of 180 days, each, with both sentences ordered to be served

5.

concurrently with any "felony time." For count 6, which merged with count 7, the court imposed a term of 24 months in prison. The court then stated that all of the terms for counts 2 through 7 would be served concurrently.

{¶ 7} Next, the court imposed a term of 18 months in prison on count 8, and a term of 24 months in prison on counts 9 and 10. It then ordered that the sentences for counts 8, 9, and 10 would be served concurrently with one another, but consecutively to the terms imposed for counts 2 through 7. Hall, therefore, received a total sentence of four years in prison.

{¶ 8} The trial court articulated the reasons that it was imposing consecutive time, beginning with the fact that there were multiple offenses demonstrating that Harris would engage in harm to others. The court found that consecutive sentences were necessary both to protect the public from future crime and to punish Harris. It further found that consecutive sentences were not disproportionate due to the seriousness of Harris' conduct – "over 30 days of torturing another individual" – and due to the danger that he poses to the public.

{¶ 9} The trial court additionally found that the offenses were committed while Harris was on community control, and that they were committed as part of a course of conduct whose purpose was "to torture the victim in this case." The trial also court found that "the harm caused was so great or unusual that no single prison term for any of these offenses committed as part of the course[] of conduct adequately reflects the seriousness

6.

of [that] conduct." Finally, the trial court found that Harris' criminal history demonstrates the necessity of imposing consecutive sentences. In making this finding, the trial court erroneously used the term "community control," instead of "consecutive sentences." Immediately after making this finding, the court clarified that it was imposing the sentences "consecutively."

{¶ 10} It is from this judgment entry on sentencing that Harris now appeals.

### Assignments of Error

{¶ 11} Harris asserts the following assignments of error on appeal:

I. The trial court erred by making findings unsupported by the record prior to imposing a consecutive sentence in the ODRC, pursuant to R.C. 2929.14(C)(4).

II. The trial court did not impose a sentence on Counts 2 and 7 at the time of Appellant's sentencing hearing.

III. Appellant's judgment entry does not include sentences for Counts 2 and 7.

### Analysis

### Consecutive Sentences

{¶ 12} Harris argues in his first assignment of error that the trial court did not make the proper findings to impose consecutive sentences.

7.

{¶ 13} R.C. 2929.14(C)(4) requires a trial court to make certain findings before imposing consecutive sentences. Specifically, the statute provides that a trial court may impose consecutive sentences on an offender if it finds "that the consecutive service is necessary to protect the public from future crime or to punish the offender," "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and that one of the following circumstances exists:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

8.

{¶ 14} "[W]hen a sentencing court makes the statutory findings under R.C. 2929.14(C)(4) for consecutive sentences, it must consider the number of sentences that it will impose consecutively along with the defendant's aggregate sentence that will result." *State v. Gwynne*, --- Ohio St. 3d. ---, 2022 Ohio-4607, --- N.E.3d ---, ¶ 12.[1]

{¶ 15} Although the trial court is required to make the requisite findings both at the sentencing hearing and in the sentencing entry, it is not obligated to state reasons in support of its findings. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. Further, although a "word-for-word recitation of the language of the statute is not required," a reviewing court must be able to discern that the trial court engaged in the correct analysis and the record must contain evidence to support the trial court's findings. *Id.* at 29.

{¶ 16} Where a defendant challenges a trial court's consecutive-sentence findings, "R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code.'" *Bonnell* at ¶ 28, quoting R.C. 2953.08(G)(2)(a).

---

[1] We will note that a motion for reconsideration was filed on January 3, 2023. That motion is still pending.

Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 17} In *State v. Gwynne*, the Supreme Court of Ohio recently explained that an appellate court, when reviewing a trial court's order of consecutive sentences, is not to defer to a trial court's findings, but instead is to act as a second fact-finder. *Id.,* --- Ohio St. 3d. ---, 2022 Ohio-4607 at ¶ 20. "An appellate court's review of the record and findings is de novo with the ultimate inquiry being whether it clearly and convincingly finds – in other words, has a firm conviction or belief – that the evidence in the record does not support the consecutive-sentence findings that the trial court made." *Id.* at ¶ 27. In performing this review, an appellate court is required to focus on both the quantity and the quality of the evidence in the record that either supports or contradicts the

10.

consecutive-sentence findings." *Id.* "An appellate court may not * * * presume that because the record contains *some* evidence relevant to and not inconsistent with the consecutive-sentence findings, that this evidence is enough to fully support the findings." (Emphasis sic.) *Id.* at ¶ 29. "[I]f, upon review of the record, the [appellate] court is left with a firm belief or conviction that the findings are not supported by the evidence, the appellate court must vacate or modify [the order of consecutive sentences.] *Id.* at ¶ 27. When modifying a defendant's consecutive sentences, an appellate court may alter the number of consecutive sentences imposed. *Id.* at ¶ 12.

{¶ 18} In his assignment of error, Harris first mentions that the trial court mistakenly referred to imposing community control sanctions at the sentencing hearing when it stated, "Further, your criminal history demonstrates that you've – it is necessary to impose these community control sentences." From the context, it is clear that the trial court simply misspoke and meant to say "consecutive" instead of "community control." Notably, the trial court correctly stated in its sentencing entry that "Defendant's criminal history demonstrates that *consecutive sentences* are necessary to protect the public from future crime by the Defendant." (Emphasis added.)

{¶ 19} Next, Harris asserts that the trial court's judgment entry only references R.C. 2929.14(C)(4)(b) in its findings. When imposing consecutive sentences, "the trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis sic.) *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493,

11.

108 N.E.3d 1028, ¶ 253, citing *Bonnell* at ¶ 37. "However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29. Here, while the trial court's judgment entry only cites R.C. 2929.14(C)(4)(b), the trial court's findings at the sentencing hearing and in the judgment entry closely track the language of the statute and demonstrate that the court found R.C. 2929.14(C)(4)(a) and (c) to be applicable as well. The trial court was not required to explicitly reference R.C. 2929.14(C)(4)(a) or (c) in its judgment entry.

{¶ 20} Furthermore, Harris does not contest the trial court's findings under R.C. 2929.14(C)(4)(a) or (c), and the record reveals that those findings are supported by the evidence. Specifically, the presentence investigation report confirms the trial court's determination that Harris was on probation in the state of Michigan at the time the instant offenses were committed, thereby supporting the trial court's finding under R.C. 2929.14(C)(4)(a). The presentence investigation report also makes clear that Harris has a criminal record that goes back over ten years and includes breaking and entering and theft. Thus, the record contains support for the trial court's finding under R.C. 2929.14(C)(4)(c) that Harris's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by him. Consequently, we do not have a firm belief or conviction that the record does not support the trial

12.

court's findings under R.C. 2929.14(C)(4)(a) and (c). Therefore, the trial court did not err when it imposed consecutive sentences under R.C. 2929.14(C)(4)(a) and (c).

{¶ 21} Finally, because only one R.C. 2929.14(C)(4) condition needs to be present to impose consecutive sentences, it is not necessary to address Harris's argument that the record does not support the trial court's finding under R.C. 2929.14(C)(4)(b). *See State v. Braswell*, 6th Dist. Lucas No. L-16-1197, 2018-Ohio-3208, ¶ 44 (recognizing that only one R.C. 2929.14(C)(4) factor needs to be supported by the record to affirm a trial court's imposition of consecutive sentences).

{¶ 22} For all of the foregoing reasons, Harris's first assignment of error is not well-taken.

### Counts Two and Seven

{¶ 23} Harris asserts in his second and third assignments of error that the trial court failed to impose a sentence for counts 2 and 7 that merged with other counts upon which the state elected to proceed at sentencing.

{¶ 24} R.C. 2941.25(A) provides: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

{¶ 25} This statute "was enacted to protect a defendant from multiple punishments or convictions for the same offense, the third protection under the Double Jeopardy

13.

Clause." *State v. Horn*, 6th Dist. Wood No. WD-21-062, 2023-Ohio-138, ¶ 12. "A conviction, for purposes of the allied-offense statute has been defined as a guilty verdict combined with imposition of a sentence or penalty." *Id.* "It is clear that a defendant may be found guilty of multiple allied offenses; however, the offenses must merge at sentencing to prevent a double jeopardy violation caused by the imposition of multiple sentences for the same crime." *Id.* "If the defendant has been found guilty of allied offenses, the trial court must direct the prosecutor to elect an offense to pursue for sentencing, and then impose a sentence that is appropriate for the state's chosen offense." (Emphasis added.) *State v. Berry*, 6th Dist. Lucas No. L-19-1275, 2021-Ohio-2249, ¶ 26.

{¶ 26} At the plea hearing, the state recognized that counts 2 and 7 merged for purposes of sentencing with counts 3 and 6, respectively. The state elected to proceed to sentencing on counts 3 and 6. Under R.C. 2941.25(A), therefore, the trial court lacked authority to impose a sentence on Counts 2 and 7.

{¶ 27} Accordingly, Harris's second and third assignments of error are found not well-taken.

## Conclusion

{¶ 28} The trial court properly imposed consecutive sentences in this case, and it did not err in failing to sentence Harris for the findings of guilt that merged for purposes

of sentencing.  The judgment of the Wood County Court of Common Pleas is affirmed.

Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.     _____
           JUDGE
Gene A. Zmuda, J.

          _____
Charles E. Sulek, J.       JUDGE
CONCUR.

          _____
           JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.